UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In Re:

Shaun Paul Gober                                      Case No: 21-00147
    Debtor,                                          Hon. James W. Boyd
_____/                       Chapter 7

EBF PARTNERS, LLC dba EVEREST                         Adv. Case No: 21-80054
BUSINESS FUNDING
    Plaintiff,
v

SHAUN PAUL GOBER,
    Defendant.

## **DEBTOR'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY DISPOSITION**

The Plaintiff has requested summary disposition as to three Counts of its adversary proceeding, Counts I, IV & VII. Plaintiff's request should be denied as to all three Counts.

## **INTRODUCTION**

The Plaintiff did not cite any cases that dealt with the issue of a Merchant Cash Advance lender/purchaser objecting to the discharge of a borrower/seller guarantor due to a breach of the Merchant Cash Advance agreement by the borrower/seller. In particular, no cases were cited for the proposition that the cessation of daily payments and the opening of a new bank account and depositing receipts of the borrower/seller into that account is grounds for denial of discharge. The Debtor was also unable to locate any cases that dealt with this issue specifically.

The Debtor's position is that, whether the Merchant Cash Advance was a loan or a sale, the issue is whether the Debtor was acting in a reasonable manner and in good faith.  The Debtor's intent is a critical fact issue.  Bullock v. BankChampaign, NA 569 U.S. 267 (2013, Kawaauahu v. Geiger, 523 U.S. 57 (1998).

## SALE OR LOAN?

The Debtor maintains that intent is critical.  Part of that argument is that EETKO's and the Debtor's treatment of the Merchant Cash Advance as a loan was reasonable.  EETKO received $75,000 which was to be repaid by daily payments of $926.09 over 5 ½ months with an annual interest rate of approximately 92%.  When the daily payments became unsustainable Debtor consulted with EETKO's accountant and attorney.  EETKO opened a new account in order to continue the business.  In the state court lawsuit filed by Plaintiff the Debtor agreed to a consent judgment finding a breach of contract and authorizing a claim and delivery order.  (See Debtor's Affidavit)

There is a recent case discussing the issue of loan or sale, In re. Shoot the Moon (BK 60979 (Bank D. Mont. 2021).  The Court in that case found that the agreement was a loan.  A comment by the Moon Court deals with the status of a guarantor such as the Debtor:

> "a consideration that overlays and unites the factors (sale or loan) is how the parties allocated risk.  A sale typically occurs when the risk of loss from the purchased assets passes to the buyer—a gamble usually reflected in the purchase price.  Conversely, in a disguised loan, the parties may employ various methods to allocate risk – the putative seller typically remains exposed to the underlying receivables and may grant the putative buyer recourse to sources of recovery beyond the receivables."  (P. 13)

In this case Debtor as a guarantor absorbed the entire loss.

### B. §727 (a)(2)(A) Count I

### TRANSFER OR CONCEALMENT OF PROPERTY

The problem for the Plaintiff here is that EETKO did not transfer any property when it closed the suspended Chase account and opened an account at 4 Front Credit Union. The Chase account was overdrawn approximately $5,300.00. The 4 Front Credit Union account was used by EETKO until EETKO closed operations. In the state court judgment EETKO agreed to the entry of a claim and delivery order. 4 Front Credit Union is a local credit union and the account was in the name of EETKO and Debtor was the only authorized signatory. The account was used to operate EETKO and pay normal operating expenses. The Debtor in his affidavit concedes that he does not know what a claim and delivery order is but one was authorized in the Consent Judgement. No property was removed, destroyed, mutilated or concealed.

To the extent Plaintiff is taking the position that the use of accounts receivable to pay normal operating expenses is transferring or concealing Plaintiff's property purchased by the Plaintiff the Debtor disputes that assertion. A few of the cases cited by Plaintiff deserve a closer look. In Heraud, 410 B.R. (Bankr. E.D. Mich. 2009) the Debtor took the fifth amendment and refused to answer questions or participate in discovery and ignored scheduling orders by the Court. He was found to have made numerous false statements. He failed to explain how $1,800,000 of funds were disposed of.

The Plaintiff cites <u>Kenney v. Smith,</u> (In re Kenney, 227 F.3d 679 6th Circuit 2000) a Sixth Circuit case.  In Kenney the Debtor placed two parcels of land in his parents' names even though he and his business provided the funds, paid all future expenses and he lived in one of the properties.  He was denied a discharge for concealing his beneficial interests and failing to list the property in his schedules.

727 (a)(2) cases are usually about a Debtor behaving badly and usually has to do with transfers of assets to other parties.  The 4 Front account was opened soon after October 16, 2019 and was the bank account used by EETKO until the bankruptcy filing.  This includes the six month period (December 19, 2019 to June 19, 2020) when Plaintiff and EETKO and Debtor were in the litigation which was resolved by a consent judgment.  Debtor consulted with EETKO's accountant and attorney and EETKO opened the new account in order to continue EETKO as a business.  The State court judgment confirmed a breach of contract and authorized a claim and delivery order.  There was no violation of 727 (a)(2) by Debtor.

### **C.  727 (a)(7)**

This is an action which deals with the same issues as the 727 (a)(2)(A) claim.  The response by the Debtor to the 727 (a)(2)(A) claim is the Debtor's response to this claim.

## D. § 523 (a)(4) – CONVERSION AND EMBELZZLEMENT

The Plaintiff's claims fail because EETKO and the Debtor never converted Plaintiff's property or embezzled Plaintiff's property.  The Plaintiff did not transfer any property to EETKO.  The Merchant Sales Agreement provided that EETKO would collect its own accounts receivable (See MCA P.1).  There were no restrictions on EETKO's use of the accounts receivable as long as the daily payments were current.  If EETKO defaulted the guarantor, Debtor, was liable for 100% of all purchased amounts, due immediately (See 3.1, MCA P. 6 and V MCA, P. 9).  EETKO used its funds to pay ordinary business expenses.  There was no fraud.  There was no intent by EETKO or the Debtor to violate the property rights of Plaintiff.

The claim that Debtor violated the terms of 523 (a)(4) fails.  There was no pre-existing fiduciary relationship. In re: Patel  (Patel v. Shamrock, In re Patel, 565 F.3d 963, 6th Circuit Court 2009) is a pre-Bullock trust case from the Sixth Circuit.  It clarifies the requirements for an "express" trust.  There must be an intent to create a trust, a trustee, a res and a definite beneficiary.  None of those elements are present in this matter.  In Shears v. Vestal Judge Dales quotes from Bullock, 133.s.Ct.at 1759:  In Shears v. Vestal (In re Vestal, 521 B.R. 604, 2014):

 "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong.  We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent.  Thus, we include reckless conduct of the kind set forth in the Model Penal Code.  Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty."

Shears was a builder's trust fund case. It is worth noting that as a contractor EETKO and Debtor could have forced significant legal problems if they had used accounts receivable that were statutorily impressed with a trust improperly.

### E.  § 523 (a)(6) CLAIM

The Plaintiff has cited a number of cases in support of its contention that the Debtor, as the manager and owner of EETKO, should be denied a discharge under the terms of § 523 (A)(6). To be found to have violated this provision the Debtor must have inflicted an injury on the Plaintiff or its property and the Debtor's conduct must have been willful and malicious (523(a)(6). In a landmark Supreme Court Case (at least to those of us who practice in Bankruptcy Court) Kavaauhau v. Geiger, 523 U.S. 57 (a)(6) The Supreme Court required "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury".

In this case EETKO and the Debtor did not take any action where the specific intent was to harm the Plaintiff. The Plaintiff cites a number of cases.

Kraus Anderson Capital, Inc. v. Bradley 507 BR 192 (BAP 6th Cir, 2014 is a Sixth Circuit Case where the Debtor sold equipment subject to a security interest by Plaintiff and did not pay the proceeds to Plaintiff. The Court had little trouble finding a willful and malicious injury to Plaintiff's property. It is a sale out of trust case.

In <u>Casalla Waste Management of Mass, Inc. v. Romaro</u> (In re Romaro 385 BR 12 (Bankr. D MASS, 2008) the Debtor misrepresented the value of receivables sold to the Plaintiff.  The sale was a traditional sale of accounts receivable.

<u>Remington Tech Corp, Inc. v. MLSMA</u> (In re MLSMA).  Bank Lexis 878 (Bankr ND Ill, July 31, 2003) is another sale out of trust case.  The Court ruled as follows.

"In this case, there is no evidence that Debtor was attempting to salvage (the business) as a going concern.  To the contrary, (Debtor) ceased all operation and proceeded to liquidate corporate assets without contacting Gateway and gaining its consent.  She placed the proceeds from the assets with (Debtor's attorney) to prevent Gateway from acquiring the funds, and directed him to pay the business trust fund tax liabilities.  In essence, Debtor used Gateway's collateral to pay a debt for which she would be liable, and which would be non-dischargeable in bankruptcy, thereby intentionally injuring Gateway for her own benefit. (P15 & 16)

<u>In Zaepfel.</u> Cite In re Zaepfel, 2020 Banker Lexis 333 Bankr WDKY February 7, 2020, The Debtor withdrew $25,938.63 cash from a business account on January 30, 2017 after Plaintiff sued and asked that a receiver be appointed on January 27, 2017 (pg. 15).  The <u>Zaepfel</u> Court had little trouble finding a willful and malicious intent.

## **CONCLUSION**

The facts in this case are not complicated.  The intent of the Debtor is the critical issue.  Debtor submits that his intent was reasonable.  The Plaintiff's motion should be denied as to all three counts.

Dated: 4-15-2022                                    /s/  Paul Bare

                                                Paul Bare (26843)  
                                                Bare & Clough, PC  
                                                Attorney for Debtor  
                                                3281 Racquet Club Drive, Unit C  
                                                Traverse City MI 49684  
                                                231-946-4901  
                                                lawofficecourtdocs@gmail.com